for oral argument this morning, and the first case is 21-10428, Soni v. Solera, Mr. Crouch. We're ready, sir, when you are. Yes, sir, thank you. So this case is a fairly limited-issue case. It deals with what it takes to compel arbitration in the new digital world in which we find ourselves. And so my contention is that my client has created a fact issue on whether or not he agreed to arbitrate. So since the briefs were written in this case, the Texas Supreme Court has actually issued some additional guidance on what it takes to create an enforceable contract to arbitrate under Texas state law. There are two cases I would bring to the Court's attention. One is the Aerotech, Inc. v. Boyd case. When were these issued that you're about to give us? One was delivered May 28, 2021. The other was March 12, 2021. So are they in your brief? They are not. Are they in a 28-J? Pardon? Are they in a 28-J, Rule 28-J submission to the Court? They are not. Sorry, I discovered them when reviewing the briefing. Why can't you just discover something that was issued in May and March and then read to us the citations the rules provide? I thought you were going to say something they issued Monday of this week. But if you're giving us something that was in March or April, it's really not helpful to the Court to suddenly discover something that was discoverable well before that and then to read it, particularly if you want us to take account of it. So it appears that you've been practicing for a while. So it would be well if you would be mindful, if it's to help the Court, file it. Put it in your brief. Your Honor, go ahead. It's also interesting your brief was filed in June after both of these cases were decided. Well, if your point is that I should be a better lawyer and have caught these cases, I agree. Sir? I said if your point is that I should have been a better lawyer and caught these cases, I agree with your assessment. But I also have an ethical obligation to bring relevant case law to the Court's authority so that you can make a ruling that takes these cases into account. So I guess, yes, you are right. I should have caught the cases, but I did not find them when doing my research, but I have since found them. And so I have an obligation to bring them to the Court. You also missed them in your reply brief, but as Judge Stewart said, we're all ears. I can, sorry, I'm trying to do the right thing by bringing them to your attention. I apologize for not finding them sooner. But both of these cases, for what they're worth, do address the Texas Supreme Court's most recent jurisprudence that I could find with respect to what it takes to create a fact issue. The Aerotech case speaks to the issue of, basically, kind of a similar situation where the onboarding process was done by computer. And what does it take to establish one of these computer check-the-box thing is a valid signature? And it does appear to, that we got the right case law because it makes reference to the Uniform Electronic Transactions Act under Texas law. And it goes through a fairly elaborate, apparently there was fairly elaborate testimony in the trial court there. They put someone on the stand to say this is what happens and this is the software and you can only go through the software and you have to agree to the boxes and so forth. So we don't really have that in this case, but I did want to point that out to the court's attention. The other case was the N. Ray Copart case. As you said, we don't have that in this case. What's the takeaway for us from the case? Well, again, we're trying to get to the issue of what does it take to create a fact issue. I understand that. I'm just asking a straightforward question. The last thing you said is we don't have that in this case. And I'm saying having given us the case, what is the takeaway from the case that helps us here? That's all I'm asking you. The court in that case concluded that it's not enough to prepare an affidavit that says I deny I signed anything. But it goes through the details and basically said where you bring in an HR person and you conduct an evidentiary hearing, which was not done in this case, and the HR person walks through the creation of the software and says it creates a specific record that's unique to every person and nobody else has that information. We can't fake that information. Then just signing and saying you didn't do it is not good enough. So that's distinguishable from the case here where we know that the employer did actually have access to the accounts. The reason we know that is we have in the record an e-mail from the employer saying here's your username, here's your password. So it could have been someone from the HR department that did it, or obviously there's the other possibility that my client did it and just doesn't remember it. But what we don't have is specific evidence, number one, of establishing a business record type record here, and number two, of what exactly was presented to my client that they are alleging constitutes an agreement to arbitrate. I note that in your brief you rely on Federal Rule of Evidence 803, the business records exception to hearsay. You rely on A through E, subpart 6, cap A through cap E. Counsel for the other side maintains that you're raising for the first time on appeal subsections cap A through cap D, and you don't reply to that in your reply brief. So what's your position on that? On appeal you appear to be claiming all of the rule, and in your brief you only relied on subpart E. Well, I think it was placed in issue. I think the trial court dealt with it as though the entire rule was an issue. I may not have expressly stated the obvious, which is they didn't even swear that this person was a custodian. They didn't go through and attest to the things. But I think the question was whether or not they have established under the business records affidavit rule all the necessary preconditions which they were required to do. Now, in my briefing to the trial court, I did specifically focus on the issue of whether or not their affidavit was reliable. And I asserted that it was not. And the reason I asserted that it was not is that my client happened to keep pretty good records. And he showed that the email that they claimed was sent on the 22nd was not sent on the 22nd. It was sent later. And his record showed that the email that they sent, it contained an attachment for Exhibit D, which is something else related to compensation, but it did not contain the arbitration agreement. And so I think that calls into question whether or not the records are reliable. But that was the primary focus on the case below. But the trial court did examine the issue of whether or not the business judgment or the business record rule was addressed. And so I think it is fairly before this court. The trial court actually listed in her opinion the entire, all of the elements of the business record rule and concluded erroneously, I think, that the defendant had complied with the rule. Well, in your brief at 10, you state, Thus the records do not satisfy the business record rule because, quote, the source of information of the method or circumstances of preparation indicate a lack of trustworthiness. And you cite subpart Cap E. So we'll just take a look at it to see whether it's preserved. I'm sure counsel for the other side will present his view. Very good. So with that said, the other interesting issue in this case is whether or not a signature is required from the employer in this case. There's, I think, compelling evidence that the parties did intend that both parties would have to sign the agreement for it to be binding. The most obvious record of that is the employment agreement itself, which says the parties, both of them, shall execute the attached exhibit C, which was not provided. And so in any common lay understanding, the parties shall execute the agreement, means some sort of a signature, or in this case if it was to be done electronically, checking the box. There's no dispute that the employer never checked the box. And then when we go to the arbitration agreement itself, the very first thing says the undersigned, and there's a box for the employer to check the box. Well, they never checked the box. And if there's no agreement with the undersigned because the under didn't sign, I think the argument is that you don't have a binding agreement to arbitrate. And if the agreement itself and the letter, contemporaneous letter, both indicate that the agreement was supposed to be executed by both parties, then the defendant has failed in its burden to raise a fact issue that there was an actual agreement to enter into this arbitration agreement. So in addition to that, of course, my client, I think, presents compelling testimony that, number one, he didn't remember signing the agreement. Number two, he did see the reference to it. He asked to be provided a copy of the agreement. He searched his emails and never got one. He didn't say, I think he didn't say, I don't remember. I think he said, I don't recall. He did. That might be a distinction without a difference. On the other hand, it might be important. But he did. I mean, his signature is on the arbitration agreement, isn't it? His electronic signature. There is a box checked that purports to be an electronic signature. And that's the agreement that was submitted to him by Solera Holdings. Well, that's the agreement that was not submitted to him. Well, you're saying he never received it. He said he doesn't recall receiving it. Well, he doesn't. And he doesn't. Concerning that, again, he just says, I just don't recall. Well, I don't want to be overly clever about this, and I don't want to have my client sign a conclusory affidavit saying he never, in his wildest imagination, ever signed such a thing. But he genuinely doesn't recall signing it. He genuinely does keep good records. He genuinely did go through and look at the e-mail stream, found the e-mail that was referenced in the affidavit submitted as evidence by the defendant, and said, well, you know what, this isn't here. This arbitration agreement is not attached to what they sent to me. And there are some links, and he clicked on the links and verified, sure enough, there's no arbitration agreement. And he does recall asking to see an arbitration agreement, asking them to send him a copy, and he says they never did. So I think the question is he did something online, and I think the question is what did he do online, and he doesn't have records of that. But what he does say is I generally keep track of records of when I agree to something, and if they had tendered an arbitration agreement, I think I would have printed it out, and I don't have any in my records. So keeping in mind that arbitration agreements typically become an issue years after they were allegedly signed or not signed, I think that's an honest man's testimony, and I don't think this court should have arbitrary rules that say you must categorically deny it when an honest man goes through, looks at his records, and determines they didn't send it to him, remembers asking for it, and confirms through looking at his e-mails that they never sent it to him, and tenders that to the court. I think what that presents is a genuine fact issue, and I would encourage the court to take the matter seriously. Unfortunately, there is a reason that plaintiffs hate arbitration. As I tell my clients, if Tom Brady couldn't win an arbitration, your chances are not terribly good. So the day-to-day experience is that arbitrations typically pay out much, much less than a jury trial. There is some statistical evidence that shows the payout is something on the order of 15% of what you would expect. As I recall, your position is that on a motion to compel arbitration, the district judge applies the same standard used for summary judgment. It is something akin to that. It may not be the exact same. So it's a hybrid. It's kind of a hybrid. So how would you state your hybrid rule? I would say look to the standard for summary judgment. That's what all the other circuits seem to be doing. The Gallagher case is a little bit different fact scenario. In Gallagher, there was the attorney who said, number one, there was a physical signature. Number two, there was the attorney that said, I saw him sign it. And there was a third-party witness who also testified, yep, that's his signature. So much stronger facts in terms of there being an actual agreement in that case. But there is some language in Gallagher, which is an unpublished decision, that says there must be a categorical, unequivocal denial of the signature before you even create a fact issue. I think I cited in the reply brief that there is an Eleventh Circuit case that says that earlier Fifth Circuit precedent has been overturned by a Supreme Court precedent and that what we're looking at is look to the law of the state, in this case Texas law, and figure out what it takes under Texas law in order for there to be a valid agreement established to enforce an arbitration. So I think my time is about up. If there are any further questions, I'll address them as best I can. Otherwise, I'll yield to— All right, Senator, I think we have your argument. You've preserved your rebuttal time, so we'll see you come back up. Thank you. All right, Mr. Rubin. Mr. Rubin, why don't you start with the standard of review? Your Honor, as this court recognized in the Gallagher case, this circuit applies a standard that's close to the summary judgment standard under Rule 56. So we don't dispute that it's very close, if not the same, as to summary judgment. So the district court here, Chief Judge Lynn, correctly compelled arbitration. Mr. Stoney's testimony that he can't recall signing the agreement and his speculation that he would have saved a copy had he signed is insufficient to create a fact issue in the face of Solaris Records showing the electronic signature on the agreement. And Stoney's own email sent just a couple hours after Solaris Records showed that the agreement was signed, confirming that he had completed all of the tasks in the online portal. Additionally, the agreement did not require Solaris signature in order to become effective. So this court has held that in order to get a trial on the making of an arbitration agreement, the party resisting arbitration, one, has to unequivocally deny entering into that agreement, and two, actually present some evidence. And Mr. Stoney has done neither here. All that he said is, I don't remember signing. And as the court in Gallagher recognized, there is a critical distinction between I don't remember signing and I didn't sign. And I don't remember is insufficient. And his other evidence hasn't created a fact issue as to whether he signed your honors. And I think it's very important to look at the timeline here. Now, when you say a fact issue, would it be hasn't created a genuine dispute of material fact or hasn't created a serious question of material fact? You're saying we should use a hybrid to the summary judgment rule, which is a genuine dispute of material fact. So what's your hybrid standard? It would be a genuine issue of material fact. Sir? It would be a genuine issue of material fact as in Rule 56. Well, that rule changed about 10 years ago. It's now a genuine dispute of material fact. Dispute. I apologize for not getting that phrasing correct. But it is really important to look at the timeline here to see why there is no genuine dispute of material fact. This all took place over the course of three or four days in February of 2018—February and early March of 2018. On February 26th, Solera sends Mr. Sone a link to go online to complete the onboarding materials. And on February 27th, it's undisputed that Mr. Sone signed the offer letter. But it's not until two days later, from the 27th of February to the 1st of March, when Solera's records show that Mr. Sone signed the arbitration agreement on March 1st at 1 p.m. And Solera put in both the agreement itself showing that Mr. Sone signed it March 1st at 1 p.m. and its online audit trail as well. And here's the critical piece of evidence that Mr. Sone put into the record himself. On March 1st at 3.44 p.m., he sends an email to Solera saying, I have completed all tasks through the web portal. I just need to go and take the drug test tomorrow. He didn't send that email on February 22nd right after he undisputedly signed the arbitration agreement. It took until – it was only on March 1st, just a couple hours after Solera's records show that he signed the arbitration agreement. Additionally, this agreement did not require Solera's signature to be effective. It's a two-part analysis. The first question is whether the agreement creates a condition precedent to require a party's signature. And then if it didn't create a condition precedent, there needs to be some other evidence in the record showing that the party assented to the agreement. And Mr. Crouch mentioned that the offer letter itself references that the parties will execute an arbitration agreement. And that is not dispositive for two reasons. First, the arbitration agreement itself contains an integration clause. So what we're looking to is the terms of the arbitration agreement itself, not some separate agreement to vary the terms. And second, and more importantly, the Texas Supreme Court and subsequent Texas court decisions have made clear that the term execute is not synonymous with a signature. There are other ways in which a party can execute an agreement. And the court recognized, the Texas Supreme Court recognized that in the McConnett case. And the Texas Court of Appeals in the S.K. Plymouth case dispelled with this exact same argument. There was a separate agreement that referenced the execution of an arbitration agreement. And the court there concluded it did not require the party's signatures. Here, there is not a condition precedent. Mr. Stoney's pointed to two things. First, there is the signature block. And this court has recognized in the Tricon case and Texas courts have recognized as well that a signature block is insufficient to make a signature condition precedent. And the only other part of the agreement that Mr. Stoney points to is the reference to the undersigned employer. But that first section of the agreement doesn't contain conditional language. The agreements that the courts have decided do truly create conditions precedent actually have that signature have a direct consequence. This court in Hakaba looked to language that said by signing, the parties are giving up the right to sue. And that written modifications are not effective unless they're signed in writing by the parties. So again, there are languages, there's language in those agreements actually have, where the signature actually triggers something. Here, it's just a reference to the undersigned, which suggests the possibility of execution by signature. But it doesn't require execution by signature. And so there is other shown that it assented to this agreement by its acts as opposed to its signature. As the courts have recognized, a party can show its assent without a signature by drafting the agreement, which Solera did here, by maintaining the agreement as a business record, which Solera did here, and by enforcing the agreement, which of course Solera did in the district court by moving to compel arbitration. I want to speak very briefly. Mr. Sonny's counsel brought up the fact that the 11th Circuit has overruled this unequivocal denial sum evidence standard in the Bazemore case. And that was brought, the Bazemore case was first mentioned in the reply brief. So I may be referring to some new authorities here, but I'd be happy to file a 28J or a supplemental brief if the court thinks it would be helpful. So the Bazemore case, which was a 2016 case, referenced the Supreme Court's decision in first options. And all that first options said was that to determine whether an arbitration agreement was formed, you look to state law. That's all that first option said. So the Fifth Circuit looked at this unequivocal denial sum evidence standard in Bazemore, or the 11th Circuit looked at this unequivocal denial sum evidence standard in Bazemore and said, that's not consistent with Georgia law. They were applying Georgia law in Bazemore. Here in contrast, it's undisputed, we're under Texas law. And Texas law materially differs from Georgia law. And this court recognized the pertinent Texas law in the Gallagher case. It's Texas rule of civil procedure 93-7 requires a party denying the execution of a document to verify that denial by affidavit. So under Texas state law, a party does have to actually deny executing an agreement in order to put that into issue. And the Texas rule goes on to say, if that party fails to do so, the agreement is received in evidence as if fully approved. And a Texas court of appeals has actually cited this unequivocal denial sum evidence standard favorably. It's in the Citigroup Global Markets versus Brown case. That's 261 Southwest 3rd 394. Finally, I just want to briefly touch on the evidentiary objection issue. The only issue that was raised in the trial court was trustworthiness. It wasn't parts A through D of the business records, business records rule. It was only part E, trustworthiness. So parts A through D, I would submit, have been waived. And additionally, the district court's trustworthiness is reviewed for clear error. And there was evidence through Ms. Hill's affidavit suggesting that these records were accurate, which permits. And so Chief Judge Lynn did not clearly err in concluding that these records were trustworthy. Additionally, under the summary judgment standard, Solera didn't even need to put these documents into the summary judgment record in admissible form. Rule 56C2 provides that a party who's objecting to evidence has to object that it cannot be presented in a form that would be admissible in evidence. And once that objection's been made, the party proffering the evidence can do one of two things. One, it can show that it's already in admissible form, or it can explain the anticipated admissible form. And Solera clearly did this here by indicating that it had maintained this document as a business record. So the court doesn't even need to get to the issue of whether the business record's exception was satisfied. Unless the court has any further questions, we'd respectfully ask that the court affirm Chief Judge Lynn's order compelling arbitration. Thank you. Thank you, Mr. Rubin. All right. Ms. Crouch, you have the right of rebuttal if you choose to use it. Thank you, Your Honor. So I'll be brief unless you have questions, but I'm not at all at ease with this standard of I don't have to present a business record affidavit and you just have to take my word for it that I will eventually at trial be able to prove some of this stuff. I think raising that in a reply brief is not fair to the plaintiff in the case. Wait. He didn't file a reply brief. He filed a response brief. You filed a reply brief. He's talking about his reply brief in the original motion to compel arbitration. So we pointed out it's like, well, she's saying it's these particular dates that they sent these emails, and our response was, well, no, it's not. The reason we say no, it's not is we kept the email, and the email's on a different date. And so if you can't be trusted on that, why should we trust you on anything else? And they're essentially coming back and saying, well, trust us. Eventually we'll be able to prove it if you let us. And I'm sorry I'm not the trusting type in that sort of thing. Counsel says all you raised below was the trustworthiness issue. You did not raise the exceptions to the hearsay that you profited earlier. So he says wavered. We heard what you said originally. So what's your retort? I don't have the original language. I'm certain that in the trial court, my principal focus was on the trustworthiness issue. I'm not sure if I opened the broader issue of whether or not they even complied with the business judgment rule. But I think the trial court— You're like your client, quote, I'm not sure, close quote. Well, I'm afraid I don't have a photographic memory. But I think the issue was fairly raised. I think most people remember what they do. I mean, if you raise the issue, you either did or you didn't. Well, I think the trial court addressed the issue. The trial court quoted the entire rule and looked at the issue. So I think even if we were not specific on that point, I think the trial court encompassed it in its decision. And I think that should be enough to preserve it for appeal. But certainly we did raise the issue of the trustworthiness argument. The person who was making the affidavit was not involved in the transaction in question, did not dispute that my client requested a copy of the writing of this alleged arbitration agreement, did not provide an email, didn't provide any of the emails in question, didn't provide an email showing that the agreement had been sent to my client, didn't provide an email or testimony evidence that this alleged agreement was provided in writing to my client or provided in a form that he could print it out so he could keep it for his records. And so it may be that if the matter is sent back for an evidentiary hearing, that all of this information is provided in a competent fashion. But we're not the trusting type. We'd like to see what evidence they have before agreeing to potentially weigh 85 percent of the value of my client's employment claims. Thank you. Thank you, Your Honor. All right. Thank you, sir. Thank you, Mr. Rubin and Mr. Crouch, for your briefing. The case will be submitted.